Ronald G. POWERS, Plaintiff,

v.

MANCOS SCHOOL DISTRICT RE-6,
MONTEZUMA COUNTY, COLO-
RADO, et al., Defendants.

Civ. A. No. C-5131.

United States District Court,
D. Colorado.

March 25, 1975.

Larry F. Hobbs and Jeffrey I. Sandman of Hobbs & Waldbaum, Denver, Colo., for plaintiff.

Michael H. Jackson and Richard C. Cockrell, Denver, Colo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

CHILSON, District Judge.

### Preliminary Statement

The plaintiff was employed by the Mancos School District in the summer of 1969 as a teacher for the school year of 1969–70. His contract was renewed on an annual basis for the years 1970–71, and 1971–72, but was not renewed for the school year 1972–73. If his contract had been renewed for the school year 1972–73, he would have become a tenured teacher and entitled to the rights of tenure as provided by Colorado statutes.

This action was brought by the plaintiff, the complaint alleging that the non-renewal

"was in retaliation for plaintiff's criticism of defendant district and its board of education, plaintiff's activities as president of his local teachers' association, and plaintiff's presentation to his classes of works of art, typified by, but not limited to *Jesus Christ Superstar*, all without warning that said conduct was proscribed and without any constitutional basis for proscribing such conduct all in derogation of plaintiff's rights to freedom of speech and expression guaranteed by the First and Fourteenth Amendments to the Constitution of the United States." (Paragraph 4 of the Complaint)

The plaintiff seeks to be restored to his position of a classroom teacher or in the alternative, be awarded a hearing. He also seeks an award of damages.

### FINDINGS OF FACT

During plaintiff's period of employment, Mr. Archuleta was superintendent of schools. For the school years of 1969–70 and 1970–71, Mr. Aspromonte was the principal who supervised the grades in which plaintiff taught. For the first semester of the school year 1971–72, Mr. Spurlock was principal. He left at midyear and Mr. Barbick replaced him as principal for the remainder of the year.

The renewal of plaintiff's contract for the second and third years was recommended by Mr. Aspromonte with reservations. The superintendent concurred in the recommendation.

The principal, Mr. Aspromonte, was of the opinion that the plaintiff had the capability of being a good teacher and, although he had not yet become one, he should have an opportunity to overcome and remedy the deficiencies which the principal, Mr. Aspromonte, had found and had pointed out to the plaintiff. The superintendent concurred with Mr. Aspromonte's evaluation and agreed that the plaintiff's contract should be renewed for the second year and again the third year to give plaintiff an opportunity to demonstrate that he could be and would be a good teacher.

When the school board met on March 16, 1972, to consider the renewal of teachers' contracts, the principal, Mr. Barbick, recommended that plaintiff's contract not be renewed and advised the school board that he felt that they could obtain a better teacher than the plaintiff. The superintendent concurred in this recommendation and the school board took the action recommended. At the same time, the school board took action not to renew the contracts of two other non-tenured teachers.

As we noted in the "Preliminary Statement", the plaintiff alleges in his complaint that the non-renewal of his contract was not because of his teaching deficiencies, but in retaliation for:

1. Plaintiff's activities as president of the local teachers' association;

2. Plaintiff's criticism of the school district and the school board;

3. Plaintiff's use of the record *Jesus Christ Superstar* in his classes.

At the trial, the plaintiff testified that in addition to the foregoing reasons, his contract was not renewed because:

1. In February 1972, plaintiff became a candidate for mayor of Mancos;

2. In his capacity as a deputy town marshal since 1970, the plaintiff had stopped one school board member (Humiston) on two occasions for traffic violations.

We direct our findings first to the last two charges. We find from the evidence that in February 1972, plaintiff decided to run for mayor of Mancos. Prior to announcing his candidacy, he consulted each member of the school board to ascertain whether or not they had any objection and in each instance, the board members advised him they had no objection. There is no evidence to support this charge.

Plaintiff testified that he thought that one of the school board members was prejudiced against him because the plaintiff as a part-time town marshal since 1970, had stopped that school board member on two occasions for violation of the traffic laws. There is no evidence that as a result, that school board member bore any ill will toward the plaintiff and in fact, he testified that he had forgotten the incidents until plaintiff testified about them at his deposition. At the time the school board took action not to renew plaintiff's contract, there is no evidence that any of the other school board members knew of these incidents, either before or at the time the board took action not to renew his contract. This charge is without support in the evidence.

We now direct our findings to the charge that the non-renewal was in retaliation for plaintiff's activities as an officer of the teachers' association. After his employment by the Mancos School District, plaintiff became a member of the local teachers' association and at the beginning of the second school year he became president. As president, he represented the local association in matters of salaries and working conditions. There is no evidence that the plaintiff's representation of the local association resulted in any conflict between the plaintiff and the board or any ill will on the part of the school board or the school administration toward plaintiff because of plaintiff's position. On the contrary, the evidence shows that the plaintiff was reemployed for a third year after he had served as president of the association for the entire second year. The evidence further discloses that the teachers' salaries were raised each year that the plaintiff was employed by the school district and no evidence that the negotiations for these increases were accompanied by controversy or ill will on the part of either the board or the teachers' association or the plaintiff. The evidence discloses that there existed between the plaintiff and the board members a friendly relationship evidenced by the fact that no objection was voiced by any school member when plaintiff consulted them with reference to running for mayor in February 1972. This charge is not supported by the evidence.

We turn now to the plaintiff's charge that his contract was not renewed in retaliation for plaintiff's criticism of the defendant district and its board of education. We find no evidence of any specific criticisms of the school board made by the plaintiff and plaintiff testified to no specific criticisms he had made of the school board or to whom such criticisms were addressed or the occasion for such criticisms, or that such criticisms came to the attention of the school board so that they might be a motive for retaliation. This charge is not supported by the evidence.

We turn now to the last of plaintiff's charges that his contract was not renewed in retaliation for "plaintiff's presentation to his classes of works of art, typified by, but not limited to *Jesus Christ Superstar*, _ _ _." We find from the evidence that in the fall of 1971 plaintiff acquired a recording of *Jesus Christ Superstar*, distributed copies of the words to his students, played the recording to his class, following which the students engaged in a discussion of the record. One of the students,

Tisa Decker, complained to her mother, that during the discussion, she was ridiculed by other students for her religious beliefs and was humiliated by the bad language that was used in the course of the discussion. Mrs. Decker related to the superintendent, Mr. Archuleta, her daughter's complaint and Mr. Archuleta arranged a meeting between the principal, Mr. Spurlock, and Mrs. Decker. At the conclusion of the conference, Mrs. Decker and Mr. Spurlock were satisfied the incident was of no great consequence and considered the matter settled.

Mrs. Decker and her daughter at no time objected to the playing of the record to the class. Their complaint was directed at the manner in which the discussion was conducted.

Later, Mr. Archuleta met with the plaintiff and stated that the plaintiff should advise the school administrators of the intended use of material which might be controversial. Mr. Spurlock, the principal, assumed the same attitude, but neither Archuleta nor Spurlock criticized plaintiff for the use of the record or denied him the use of such material in his classes.

That Mr. Archuleta, Mr. Spurlock, Mr. Barbick, and the school board did not act in retaliation for plaintiff's use of the record is evidenced by the fact that in the same school year, another teacher, Janet Wilson, a non-tenured teacher, used the same record in her classes with no objection by the school board or the school administrators and she was later reemployed by the school board and now has tenure.

Plaintiff testified that his playing of the record was discussed at the executive meeting of the school board at which the renewal of teachers' contracts was discussed. In support of this testimony, plaintiff further testified that Mr. Martinez, a member of the school board, told him the day after the non-renewal action, that the board had discussed plaintiff's use of the record. However, Mr. Martinez testified that plaintiff, on the day after the school board meeting, attempted to pressure him into stating that the record had been discussed. Mr. Martinez testified there was no such discussion at the board meeting. The Court finds the testimony of Martinez to be more credible than that of the plaintiff.

Four of the five members of the Board of Education testified that they had no knowledge whatsoever of either the work, *Jesus Christ Superstar*, or the plaintiff's use of it in his English class until after the Board meeting on March 16, 1972. The other member of the board of education testified that he was aware of the plaintiff's use of this work in his class and that he, himself, liked the recording. All board members testified that plaintiff's use of *Jesus Christ Superstar* in his English class was not discussed at either the executive session or in the public meeting and that plaintiff's use of the record when the non-renewal action was taken, did not enter into their decision.

The Court finds that the plaintiff's use of the record was not discussed at the board meeting and finds that the nonrenewal of the plaintiff's contract was not in retaliation for the use by the plaintiff of the recording, *Jesus Christ Superstar*.

█ Insofar as the plaintiff asserts that the principals and superintendent and the school board acted with malice and in bad faith toward the plaintiff in the non-renewal of plaintiff's contract, the Court finds that the principals' evaluation of the plaintiff's work as a teacher was the exercise of a duty imposed upon them and that they acted in good faith, without malice and in so doing, that they did not infringe the plaintiff's Federal Constitutional rights.

The superintendent in determining whether to concur or not to concur in a principal's evaluations of teachers and recommendations as to renewal or non-renewal of teachers' contracts was exercising a duty imposed upon him by virtue of his position. The Court finds that the superintendent, Mr. Archuleta,

**326**

in concurring with Mr. Aspromonte's recommendation to reemploy plaintiff for the second and third years and his concurrence with the recommendation of the principal, Mr. Barbick, that his employment should not be renewed for the fourth year acted in good faith and without malice toward the plaintiff.

The sole reason communicated to the school board by Mr. Barbick and Mr. Archuleta for the recommendation that plaintiff's contract not be renewed was that in view of the plaintiff's deficiencies they felt that a better teacher could be employed and that such recommendation was made by Mr. Barbick and Mr. Archuleta in good faith and without malice.

The Court further finds that the plaintiff has not sustained the burden of proof imposed upon him to prove the allegations of the complaint and the defendants are entitled to a judgment of dismissal of the action and the complaints therein and for judgment against the plaintiff for the defendants' costs to be taxed by the Clerk of the Court upon the filing of a bill of costs.

## CONCLUSIONS OF LAW

The Court concludes as a matter of law that the plaintiff failed to sustain the burden of proof imposed upon him to prove by a preponderance of the evidence that his contract was not renewed in retaliation for the exercise by the plaintiff of his Federal Constitutional rights and this action and the complaints therein should be dismissed with prejudice and the defendants have judgment against the plaintiff for their costs to be taxed by the Clerk of the Court upon the filing of a bill of costs.

It is therefore ordered that judgment of dismissal with prejudice of this action and the original and amended complaints therein shall forthwith enter, together with judgment for the defendants and against the plaintiff for the defendants' costs to be taxed by the Clerk of the Court upon the filing of a bill of costs.