Donald WEATHERS,
Plaintiff-Appellant,

v.

**WEST YUMA COUNTY SCHOOL
DISTRICT R–J–1 et al.,**
Defendants-Appellees.

No. 75–1134.

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 11, 1975.

Decided Feb. 25, 1976.

Michael H. Gottesman, Washington, D. C. (Robert L. Weinberg and David Rubin, Washington, D. C., Larry F. Hobbs, Denver, Colo., on the brief), for plaintiff-appellant.

Gerald A. Caplan, Boulder, Colo. (Richard E. Bump, Boulder, Colo., and Reese Miller, Denver, Colo., on the brief), for defendants-appellees.

Before BREITENSTEIN, HILL and BARRETT, Circuit Judges.

HILL, Circuit Judge.

Appellant Donald Weathers seeks reversal of the judgment against him in this suit arising under 42 U.S.C. §§ 1983 and 1985. This action results from the nonrenewal of appellant's teaching contract by the school board acting on behalf of the school district.

Appellant began teaching in appellee school district under a one-year contract beginning on August 25, 1970. The contract was renewed in the spring of 1971 for a term ending August 24, 1972. When the board met in February, 1972, for preliminary discussions concerning reemployment of probationary teachers, of whom appellant was one, certain communications from students and students' parents regarding appellant were discussed. The next day appellant's principal informed him that he might not be renewed. The reasons for nonrenewal as discussed at the board meeting were disclosed to appellant by the principal. These reasons were contained in the following note which the principal had taken at the meeting; appellant was given a copy.

Swore or called a boy a bad name after the Brush game

Has too much busy work in class that doesn't figure into grade

Student prepared a 3-page assignment, handed it in and wasn't look[ed] at

In group contest discussion, total group gets the same grade, regardless of degree of participation by individuals.[1]

The board president met with appellant the following day and appellant sought to discover who had made the complaints. The board president did not disclose the complainants' identities.

On February 29, 1972, appellant met with the board which was in executive session. Appellant attempted to explain his conduct; he denied using profanity and explained his teaching methods and grading procedures. On March 9, 1972, the board unanimously voted not to renew appellant's contract. Appellant received a letter from the board stating in part:

After evaluation of your over-all performance a unanimous vote was cast not to re-employ you for the coming 1972–73 school year.

Subsequent efforts by the West Yuma Education Association to gain a formal board hearing to reconsider the nonrenewal decision were rejected by the board.

Suit was brought against appellees, the school district and the board members in their individual and official capacities. In his complaint, appellant alleged, *inter alia*, (1) procedural violations (no written notice of the reasons for nonrenewal and no full and fair hearing) which deprived him of property and liberty without due process of law and (2) arbitrary, unreasoned action by appellees in terminating him ("not supported by substantial evidence, wholly unsupported in fact"). The trial court determined that appellant had no property or liberty interest under the facts of this case and that the lack of either of those interests prevented the board's decision, even if patently unfair, from attaining constitutional significance. *Weathers v. West Yuma County School Dist. R–J–1*, 387 F.Supp. 552 (D.Colo.1974).

Initially, we note the context of this case. Appellant was a nontenured (probationary) teacher; the two contracts he was employed under contained specified terms. He has not alleged his nonre-

1. Five letters containing complaints concerning appellant were received by the board. Not all of these letters were received by the early February, 1972, meeting. One letter alleged that "our junior high boys [sic] morals have suffered greatly with this coach." Board members also received oral communications from school district patrons concerning appellant. There is no indication any of these complaints were referred to the superintendent by the board.

newal was for constitutionally impermissible reasons.[2]

His first claim is proper procedures were not followed in making the decision to nonrenew his contract. This contention is grounded in the Fourteenth Amendment which provides in pertinent part: " . . . nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ." As the Supreme Court said in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972):

> The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.

Thus, to sustain appellant's claim of denial of due process, a liberty or property interest must be present to which the protection of due process can attach. *E. g., Abeyta v. Town of Taos*, 499 F.2d 323 (10th Cir. 1974).

## PROPERTY INTEREST

■ Appellant's lack of formal tenure does not rule out the existence of the requisite property interest. *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The trial court correctly recognized that property interests can result from implied agreements or statutory or administrative procedures governing nonrenewal. *Perry v. Sindermann, supra; Burdeau v. Trustees of California State Colleges*, 508 F.2d 770 (9th Cir. 1974). The trial court, however, determined appellant possessed no statutory or contractual right of continued employment and no informal custom or policy of reemployment was shown. Consequently, appellant did not show an objective expectation of continued employment and did not possess a property interest protected by the Fourteenth Amendment.

■ On appeal, appellant relies upon one school board policy to establish his property interest. This policy, designated Paragraph 2.8, is located in Section II, entitled "Board of Education". The policy reads as follows:

### Complaints to Board Members

Individuals or groups often confront a single board member with issues which usually should be handled by the Superintendent of Schools. In those instances of apparent exception, it is suggested that the board member withhold an expression of opinion or commitment until the matter has been presented to the Board of Education. It is often wise for the board member to postpone the formulation of his own opinion until he has had the benefit of hearing the issue discussed by the Board of Education where other aspects of the problem are considered. A board member should not obligate other members of the Board of Education by predicting how they will vote on any issue.

In carrying out the policy for the handling of complaints the Board will, therefore, observe the following procedure. Neither the Board of Education as a unit nor any individual member will entertain or consider communications or complaints from teachers, parents, or patrons, until they have first been referred to the Superintendent of Schools. Only in those instances where satisfactory adjustment cannot be made by the Superintendent and his assistants, shall communications and complaints be referred to the Board. After hearing evidence submitted by the Superintendent, in such event, the Board of Education will, if it deems advisable, grant a hearing to

---

**2.** Cases dealing with allegations of constitutionally impermissible reasons for dismissal include *Bertot v. School Dist. No. 1*, 522 F.2d 1171 (10th Cir. 1975); *Adams v. Campbell County School Dist.*, 511 F.2d 1242 (10th Cir. 1975).

the parties interested. Such a hearing may be held during executive session of the Board.

Appellant argues this policy was not complied with because the complaints against appellant were not referred to the superintendent. Appellant contends this policy provided him an objective expectancy that he would not be denied renewal because of parental complaints without a prior administrative effort to adjust such complaints. The trial court did not comment directly on Paragraph 2.8. The court did say, "The conspicuous omission of any procedures for making nonrenewal decisions in cases of probationary teachers distinguishes this case from the precedents cited by plaintiff."

Appellees argue, on appeal, that this policy merely established a procedure for handling complaints or issues raised by parents, teachers or patrons. They say the policy sought to regulate board of education conduct in relation to such complaints and the policy did not relate directly to employment or dismissal.

Appellant contends that although the government might be free to dismiss employees without procedural safeguards, once it establishes such safeguards by regulation it must adhere to them. *Vitarelli v. Seaton*, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). Paragraph 2.8, however, does not set forth any procedure relating to nonrenewal or termination. Thus, the above precedents are inapplicable.

Also, this case is far removed from the *Perry v. Sindermann, supra*, situation where the Court determined certain rules and understandings might constitute a de facto tenure. In the instant case, a specific board policy dealt with termination of nontenured personnel. It provided as follows:

The Board may refuse to renew the contract of any probationary teacher for cause or *without cause*. In the event a teacher is not to be employed for the succeeding year, the Board shall cause written notice to be given the teacher on or before the fifteenth (15th) day of April. [Emphasis added.]

Paragraph 2.8 does not establish de facto tenure to any extent; this conclusion seems particularly supported by the existence of the policy governing renewal of probationary teachers' contracts, which provides for nonrenewal "with or without cause." The communications at issue were generally addressed to the question of renewal itself.[3] It is doubtful Paragraph 2.8 was intended to prevent the board from directly receiving and considering communications of this nature. Moreover, the "without cause" provision negates an *objective expectancy* that the board would not consider communications of this nature unless shunted through the Paragraph 2.8 procedure. Consequently, we agree with the trial court that appellant has failed to show the existence of a Fourteenth Amendment property interest.

## LIBERTY INTEREST

Appellant also contends he had a liberty interest which he was deprived of without due process of law. The Supreme Court has recognized that a state's refusal to reemploy a person may affect that person's liberty interest. *Board of Regents v. Roth, supra*. "The concept of liberty recognizes two particular interests of a public employee: 1) the protection of his good name, reputation, honor and integrity, and 2) his freedom to take advantage of other employment opportunities." *Lipp v. Board of Educ.*, 470 F.2d 802 (7th Cir. 1972). On appeal, appellant asserts his liberty interest is of the second variety. He contends the grounds for nonrenewal were

---

**3.** One letter stated simply, "Get rid of him please." Another letter said two of the writers' children would have Mr. and Mrs. Weathers next year, "if they are re-hired." A third letter requested "special consideration and study before you return Mr. Weathers. . . ." The writer of another letter testified she knew she wrote the letter before the board reviewed teachers' contracts because she wanted to get it in before that date.

such that, if disclosed to prospective employers, they would foreclose his freedom to take advantage of other employment opportunities. He further claims the reasons were likely to be communicated to prospective employers and post-termination events confirm the apparent foreclosure of employment opportunities to him.

The trial court determined the evidence contained ". . . nothing even remotely approximating the imposition upon plaintiff of 'a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities'" [citing *Roth*]. The trial court treated this as a case where reasons are given for nonrenewal, and we will follow that treatment.

■ Initially, appellant argues that a practical test is created by *Roth*, that is, a court must determine if practically speaking the grounds for nonrenewal will substantially interfere with opportunities for subsequent employment. Appellant posits this practical test as opposed to a legal barrier test he believes is found in *Adams v. Walker*, 492 F.2d 1003 (7th Cir. 1974). Appellant cites *Abeyta v. Town of Taos, supra*, as indicating this Circuit's adoption of the practical test. Appellant also says this Circuit indicated in *Abeyta* that a liberty interest was present if the reasons created a "disadvantage in obtaining other employment."

We agree with appellant that a practical test should be employed in determining the existence of a liberty interest when foreclosure of employment opportunities is alleged. *See LaBorde v. Franklin Parish School Bd.*, 510 F.2d 590 (5th Cir. 1975); *Blair v. Board of Regents*, 496 F.2d 322 (6th Cir. 1974); *Wellner v. Minnesota State Junior College Bd.*, 487 F.2d 153 (8th Cir. 1973); *Lipp v. Board of Educ., supra*. We do not agree that this Circuit has established the extent of foreclosure necessary to create a liberty interest as being a "disadvantage in obtaining other employment." In *Abeyta*, the Court determined the discharged employees had shown no "disad-

vantage in obtaining other employment." The Court was indicating that not even a minimal impediment to employment had been established.

The Supreme Court in *Roth* said:

Mere proof, for example, that his record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of "liberty."

This statement was made in a case where no reasons for nonrenewal were given. The Court, however, clearly said that for a liberty interest to be present under the second alternative the failure to reemploy had to impose on the employee "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities."

■ The instant case may well be one where the fact of nonrenewal and the reasons therefor, if communicated, would make the appellant "less attractive" to future employers. That is simply not enough to establish a liberty interest. We agree with the trial court that nothing present in this case indicates appellant has had such a stigma imposed upon him as to foreclose future employment opportunities.

As the Ninth Circuit said in *Gray v. Union County Intermediate Educ. Dist.*, 520 F.2d 803 (1975):

Nearly any reason assigned for dismissal is likely to be to some extent a negative reflection on an individual's ability, temperament, or character (citation omitted). But not every dismissal assumes a constitutional magnitude. The concern is only with the type of stigma that seriously damages an individual's ability to take advantage of other employment opportunities (citations omitted).

*See LaBorde v. Franklin Parish School Bd., supra* (reasons reflected dissatisfaction with her teaching methods and classroom conduct); *Blair v. Board of Regents, supra* (professional relationships with individual students frequently

failed to meet minimal standards); *Lipp v. Board of Educ., supra* (concern for pupils may not be efficacious because of extreme anti-establishment obsession); *Ferris v. Special School Dist. No. 1,* 367 F.Supp. 459 (D.Minn.1973) (defensive, rude, argumentative and sullen). Evidence of two attempts by appellant to secure employment does not convince us that this determination concerning foreclosure of employment opportunities is in error, either in theory or in fact.

Appellant has failed to establish the existence of a liberty interest. Because neither a liberty nor property interest was present, appellant did not have a right of constitutional derivation to procedural due process.

### ARBITRARY AND CAPRICIOUS NONRENEWAL

██ Appellant argues that, even if no procedural deficiencies were present, his nonrenewal was substantively arbitrary and capricious. The trial court, after determining no liberty or property interest was involved, stated:

[I]t becomes unnecessary to address plaintiff's final claim that defendants acted "arbitrarily and capriciously" in violation of his substantive due process rights. Even if the board's decision were patently unfair, an issue upon which we express no opinion, the plaintiff's lack of either a property or liberty interest would prevent such unfairness from attaining constitutional significance.

Appellant contends the trial court should have determined this issue and requests a remand for that purpose. Appellees counter that the trial court properly refused to consider this issue because of its prior determination that no liberty or property interest was present. We agree with appellees.

Since *Roth*, at least two circuits have confronted this issue. Both have resolved the issue in appellees' favor. Judge Stevens writing for the Seventh Circuit in *Jeffries v. Turkey Run Consol. School Dist.,* 492 F.2d 1 (1974), provides an extensive analysis of the question.

In our opinion, the questions whether a nontenured teacher, whose contract is not renewed, has any right to a statement of reasons or to judicial review of the adequacy or accuracy of such a statement are matters of state law, not federal constitutional law. There are sound policy reasons to support either a statutory requirement, or an administrative practice, that a complete and accurate written statement of the reasons for such an important decision be promptly delivered to the teacher. But since, by hypothesis, no constitutionally protected property or liberty interest of the teacher is impaired by the Board's action, she has no federally protected right to a fair hearing or to a fair statement of reasons. The fact that a state, or a School Board, may voluntarily communicate more information to her, or receive more information from her, than the Constitution requires, is not in itself sufficient to create a federal right that does not otherwise exist.

.    .    .    .    .

The claim that a person is entitled to "substantive due process" means, . . . that state action which deprives him of life, liberty, or property must have a rational basis—that is to say, the reason for the deprivation may not be so inadequate that the judiciary will characterize it as "arbitrary." . . . In this case we need not appraise the viability of the concept, or the extent to which it authorizes federal judges to impose their own views about what is "unrelated to the educational process or to working relationships within the educational institution" upon locally elected school boards. For the same critical objection to any procedural due process claim by the plaintiff also forecloses her argument based on "substantive due process."

Judge Stevens believed that the right to substantive due process was not a greater right than that of procedural due process which had clearly been held applicable in *Roth* only when state action

impaired a person's interest in liberty or property. Consequently, the absence of a liberty or property interest as required for application of procedural due process foreclosed the inquiry as to the substantive due process claim. The Seventh Circuit has followed *Jeffries* in *Miller v. School Dist. No. 167*, 495 F.2d 658 (1974).

The Eighth Circuit has also adopted this approach, *Buhr v. Buffalo Pub. School Dist. No. 38*, 509 F.2d 1196 (1974). The court, in denying consideration of the teacher's claim that the reasons cited by the school board were totally unsupported by factual evidence (substantive due process), felt it was of primary importance that the teacher had no right to procedural due process.

> Without wishing to encourage school boards to retreat behind a veil of silence in such situations, we must conclude that where a teacher can constitutionally be dismissed for no reason, he or she can be dismissed for reasons unsupported by factual evidence. In other words, to the extent that our cases recognize a constitutional right to *substantive* due process, that right, as expressed by the Seventh Circuit, "is no greater than the right to procedural due process." *Jeffries v. Turkey Run Consolidated School District*, supra, 492 F.2d at 4.

*See also Scheelhaase v. Woodbury Cent. Community School Dist.*, 488 F.2d 237 (8th Cir. 1973), *cert. denied*, 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974); *Freeman v. Gould Special School Dist.*, 405 F.2d 1153 (8th Cir. 1969), *cert. denied*, 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed.2d 93.

We cannot ignore cases contrary to the Seventh and Eighth Circuits. In *Drown v. Portsmouth School Dist.*, 451 F.2d 1106 (1971) (*Drown* II), the First

Circuit stated, prior to *Roth*, the reasons given for nonrenewal for a nontenured teacher could not be arbitrary and capricious. This decision effectuated the First Circuit's ruling in *Drown* I, 435 F.2d 1182 (1970), *cert. denied*, 402 U.S. 972, 91 S.Ct. 1659, 29 L.Ed.2d 137 (1971), that a nontenured teacher was entitled to a statement of reasons for nonrenewal as a matter of procedural due process. In *Drown* II, the court cites the circuit and district courts' opinions in *Roth*, which were reversed by the Supreme Court. *Drown* I was relied on in *Chase v. Fall Mountain Regional School Dist.*, 330 F.Supp. 388 (D.N.H.1971). Although this latter case could be rationalized on a "liberty interest" analysis, the court said:

> To hold that a superintendent and a School Board need make no inquiry as to the truth or falsehood of the facts underlying the reason proffered for dismissal would offend the most elemental concepts of justice.

Appellant also points to numerous Supreme Court cases which have involved a determination that action taken was arbitrary and capricious.[4] Appellant believes these and other cases support his basic argument that the right to protection against arbitrary and capricious action is itself a liberty within the Fourteenth Amendment. *See Beatham v. Manson*, 369 F.Supp. 783 (D.Conn.1973); *Heaphy v. United States Treasury Dep't*, 354 F.Supp. 396 (S.D.N.Y.1973), *aff'd* 489 F.2d 735 (1974).

Factual distinctions between these cases and the one at hand are self-evident. Several cited cases, however, do give some general support to appellant's argument. Following all the Supreme Court cases cited, that Court in *Roth* made direct pronouncements on the pro-

---

**4.** Appellant cites the following Supreme Court cases: *Cramp v. Board of Pub. Instruction*, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961); *Cafeteria Workers Union v. McElroy*, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); *Konigsberg v. State Bar of California*, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957); *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); *Slochower v. Board of Educ.*, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); *Wieman v. Updegraff*, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952). Several of these cases involve statutory exclusions. Some would come within a "liberty interest" analysis. In *Jeffries v. Turkey Run Consol. School Dist.*, supra, several of these cases are distinguished.

cedural due process required in a situation similar to the one before this Court. *Roth* has been properly interpreted as holding a statement of reasons is not required for procedural due process when a nontenured teacher is nonrenewed. *Frazier v. Curators of Univ. of Missouri,* 495 F.2d 1149 (8th Cir. 1974); *Jeffries v. Turkey Run Consol. School Dist., supra.* If a school board is not required by procedural due process to give any reasons, we cannot see why a statement of reasons, if given, need be based upon substantial evidence. *Buhr v. Public School Dist. No. 38, supra.* The Supreme Court gave no indication that substantive due process might not be complied with if procedural due process were complied with; we will not, on the basis of statements in other contexts, import an additional independent due process requirement into the *Roth* situation. In the absence of a property or liberty interest, as defined in *Roth,* the trial court properly refused to consider the merits of appellant's claim of arbitrary and capricious action by the school board.

One final argument concerns the trial court's determination that it had no jurisdiction over the school board under either 42 U.S.C. § 1983 or 28 U.S.C. § 1331. The trial court had determined that jurisdiction existed over the individual board members and this determination has not been appealed. As we have determined that no cause of action is present, it is unnecessary to consider this jurisdiction issue. We intimate no opinion whatsoever on the school board jurisdiction issue.

Affirmed.