Ronald G. POWERS, Plaintiff-Appellant,

v.

MANCOS SCHOOL DISTRICT RE–6, MONTEZUMA COUNTY, COLORA-DO, et al., Defendants-Appellees.

No. 75–1386.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Feb. 26, 1976.

Decided May 10, 1976.

Donald P. MacDonald, of Hornbein, Mac-Donald & Fattor, Denver, Colorado, for plaintiff-appellant.

Michael H. Jackson, Denver, Colo. (Richard C. Cockrell and Peter J. Wiebe, Jr., Denver, Colo., with him on the brief), Henry, Cockrell, Quinn & Creighton, Denver, Colo., for defendants-appellees.

Before LEWIS, Chief Judge, and SETH and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Ronald G. Powers (Powers), a teacher, appeals from the District Court order dismissing his amended complaint and awarding judgment to the defendants-appellees, who are the five members of the Board of Directors and the Superintendent of Mancos School District in the State of Colorado, each of whom were sued in their individual and official capacities. For convenience, appellees shall hereafter be referred to as Directors or Board. The Court had previously granted a motion to dismiss the school district as a party defendant on the ground that a school district is not a person under the Civil Rights Act, 42 U.S.C.A. § 1983, relying upon *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) and *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). No appeal is taken from that ruling.

### The Facts

Powers was first employed by the Mancos School District in 1969 for the academic year 1969–1970 as an English teacher in grades 10, 11 and 12. Director Julio Archuleta was superintendent for the entire period of Powers' employment. Dominick Aspromonte was principal during the academic years 1969–1970 and 1970–1971 during which Powers was given one-year contracts. James Spurlock was principal for the first semester and Mr. Barbick was principal for the second semester of Powers' final academic contract year of 1971–1972.

Mancos is a small rural community of about 800 population. The entire pupil en-

rollment, grades kindergarten through 12, is about 430. There are approximately 22 teachers and 3 administrators.

Powers was about 31 years of age when he was first employed at Mancos. He had obtained a B.A. degree from Ft. Lewis College and had gained 24 graduate semester hours from the School of Government, George Washington University, Washington, D. C. He held a Colorado certified teacher's license. Before coming to Mancos, Powers had taught one year of 7th, 8th and 9th grade English, 11th grade American History and 12th grade Functional English. This was followed by one year of graduate study at George Washington; employment for one year with the U.S. Forest Service in San Isabel National Forest, near Pueblo, Colorado; then a one year teaching assignment at the Saguache, Colorado, system (his contract was not renewed) where he taught 7th, 8th and 9th grade Social Studies, 11th grade American History and helped with the wrestling program.

During Powers' first year at Mancos, Dominick Aspromonte, as principal, observed Powers both in and out of the classroom. Powers was aware that Aspromonte was to evaluate him and to make a recommendation relative to renewal of his teaching contract. Aspromonte was in contact with Powers almost daily. He had many informal conferences with him. He recommended Powers to the Board for contract renewal at the Spring, 1970 Board meeting with some reservations. During Powers' second contract year of 1970–1971, Aspromonte completed two written evaluations of Powers. During this period, Aspromonte spent more time in Powers' classroom. He testified that Powers had "some excellent qualities as a teacher, but some of the other qualities counterbalanced them". [R., Vol. IV, p. 309]. Some of the qualities which Aspromonte believed to be counterbalancing were lax manners of students in his classes; that certain language was used; that some jokes were told in class by both students and Powers; and that Powers was very curt when parents came to school for information. [R., Vol. IV, p. 308]. He ad-vised Powers both during his first and second teaching years that he intended to recommend his contract renewal with reservations. His personal relationship with Powers was very amenable. [R., Vol. IV, p. 310]. Aspromonte and his wife were close social friends of Powers and his wife. Aspromonte was fully aware that Powers served as a Deputy Town Marshal, a volunteer fireman and was an active participant in the Mancos Education Association (MEA), the local teachers' association.

Powers testified that during his second year at Mancos, after he became president of MEA, that he had conflicts with Superintendent Archuleta involving whether meetings of the Salary Committee (of MEA) could be held in the school, the submission of schedules and the fact that he (Powers) appeared before the Board on behalf of Bill Hendrickson, a teacher whose contract was not to be renewed, in opposition to the views of Aspromonte and Archuleta. Powers testified that he appeared on behalf of MEA, as its president, and that following the hearing Hendrickson's contract was renewed. [R., Vol. II, p. 93]. Powers also testified that during the month of February, 1972 (his third school year) he became a candidate for mayor of Mancos.

The first written evaluation of Powers' performance during his final year at Mancos was prepared by Principal James Spurlock. While his evaluation report reflected that Powers was a good to superior teacher, it was critical of his rather informal classroom atmosphere which could lead to possible damage to equipment (such as students leaning back in chairs), and an incident involving Powers' English classroom lesson plan apparently consuming some three days involving playing of the recording "Jesus Christ Superstar", which resulted in some complaints by students and one parent. [R., Vol. II, pp. 163–167]. Spurlock was succeeded by Mr. Barbick, who was not available to testify at trial. It is unchallenged, however, that Barbick did not recommend Powers for contract renewal. He advised the Board that in his judgment the services of a better teacher could be obtain-

ed [R., Vol. IV, pp. 333, 354, 367]. Barbick reported that Powers' classroom performance was "barely adequate" or "minimal". [R., Vol. IV, p. 372]. Superintendent Archuleta concurred in Barbick's recommendation that Powers' contract not be renewed.

The Board voted unanimously on March 16, 1972, not to renew Powers' contract. At the same meeting the Board voted not to renew the contracts of two other probationary (nontenured) teachers. No reasons were stated by the Board at the open meeting when Powers' contract was not renewed and neither the Board nor the individual Directors have ever stated publicly any reasons for the non-renewal of his contract.

Powers alleged that the Directors deprived him of his salary as a teacher and loss of face and standing in the community by virtue of nonrenewal of his teaching contract for the academic year 1972–1973 in derogation of his rights of freedom of speech and expression guaranteed him by the First and Fourteenth Amendments to the Constitution of the United States. He invoked jurisdiction under 28 U.S.C.A. § 1343 as authorized by the Civil Rights Act, 42 U.S.C.A. § 1983. Alternatively, he invoked jurisdiction pursuant to 28 U.S.C.A. § 1331, alleging that the amount in controversy exceeds the sum of $10,000.00. Powers sought damages of $100,000.00, costs and attorneys' fees or, alternatively, return to his classroom teaching position together with lost, past salary with interest from the date of termination and all emoluments, including tenure or a notice of the reasons for his contract nonrenewal from the Directors, together with an opportunity for hearing to test those reasons.

Trial was to the court from March 10, 1975 to and including March 13, 1975. Some 10 witnesses testified for Powers and some five witnesses testified for the Directors. The Trial Court filed detailed Findings of Fact, Conclusions of Law and Order on March 25, 1975. The Court found that Powers had not sustained his burden of proof, i. e., proof of his allegations by a preponderance of the evidence to the effect

that his teaching contract was not renewed in retaliation for the exercise of his federal constitutional rights.

*Trial Court Findings and Conclusions*

The Trial Court succinctly set forth those causes alleged by Powers to have been improperly relied upon by the Directors in the determination not to renew his contract for the school year 1972–1973, each of which Powers contends infringe or deny constitutional rights guaranteed him in the nature of free speech and expression, to-wit:

(a) Powers' criticism of the Board in his capacity as president of MEA;

(b) Powers' presentation to his classes of "works of art", typified by, but not limited to the recording entitled *"Jesus Christ Superstar"*;

(c) Powers' candidacy for mayor of Mancos;

(d) The fact that, in his capacity as a deputy town marshal since 1970, Powers had stopped Board member Humiston twice for traffic violations.

In each and every instance the Trial Court found that none of the incidents or causes alleged resulted in the Board action not to renew Powers' contract and that there was no evidence to support these charges; that neither the superintendent, the principals or the Board members acted with malice or in bad faith, and that the record reflects that they acted in good faith and without malice toward Powers.

In conclusion, the Trial Court stated that Powers had failed to sustain the burden of proof imposed upon him by a preponderance of the evidence. *See Powers v. Mancos School District Re–6*, Montezuma County, Colorado, 391 F.Supp. 322 (D.C.Colo.1975).

*Allegations of Error*

On appeal Powers contends: (1) the non-renewal of his contract constituted a violation of his academic freedom under the First Amendment to the Constitution of the United States, (2) the actions of the Directors pursuant to the termination of his employment deprived him of liberty without due process of law as made applicable

under the Fourteenth Amendment to the Constitution of the United States, (3) a dismissal based in part on a constitutionally impermissible ground should be held invalid, (4) the limited admission of Exhibit L restricted his evidence on the state of mind of a Director, (5) the findings of the Trial Court fail to show cause for the nonrenewal of his contract, (6) the Trial Court's findings concerning the use of "Jesus Christ Superstar" are misdirected and (7) the totality of the evidence compels further inquiry.

### Colorado Tenure Law

In order for a teacher to acquire tenure status under Colorado law [C.R.S.1973, § 22–63–112(1)], he or she must have been employed in the same school district for three continuous and uninterrupted academic years (including the time prior to and after July, 1967) and who is reemployed for the fourth academic year immediately succeeding.

A Colorado teacher does not, accordingly, have tenure unless reemployed for the fourth year of continuous service. No contention is made otherwise in the case at bar. It is well settled that in the area of teacher employment the question as to whether a teacher has a *property right* within the meaning of the due process clause of the Fourteenth Amendment of the Constitution is determined by the law of the state, inasmuch as there is no federal constitutional right to public employment. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). No such right accrued to Powers under the law of Colorado. *Marzec v. Fremont County School District No. 2,* 142 Colo. 83, 349 P.2d 699 (1960).

### Contentions of Deprivation of Liberty and Property Interests

Powers contends that the nonrenewal of his employment contract constituted a deprivation of *liberty* and *property* rights guaranteed him under the due process clause of the Fourteenth Amendment. To be sure, *Board of Regents v. Roth, supra,* recognized that a state's refusal to reemploy a person may affect that person's liberty interest. The concept recognizes two particular interests: (1) the protection of the public employee's good name, reputation, honor and integrity and (2) his freedom to take advantage of other employment opportunities.

Powers argues that the termination of a teacher has more profound, adverse and negative impact on the teacher's professional future than the suspension of a student for alleged misconduct which, under the mandates of *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), requires that the student be provided minimal due process safeguards.

In this Court's recent opinion entitled *Weathers v. West Yuma County School District R–J–1 et al.,* 530 F.2d 1335, 1339 10th Cir., 1976) we cited Roth, *supra,* for the rule that "mere proof . . . that his record of nonretention in one job, taken alone, might make him somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.'" The above rule was held to apply in a case, such as the one at bar, where *no reasons* for nonrenewal were given. In *Weathers, supra,* reasons *were given* for nonrenewal of a nontenured teacher's contract. The reasons were not substantial. Furthermore, they were either denied or explained by Weathers. We upheld the Trial Court's dismissal of Weather's complaint on the grounds that (a) Weathers possessed no statutory or contractual rights to continued teaching employment and (b) no informal custom or policy of reemployment was shown. We concluded that Weathers did not show an objective expectation of continued employment and he did not possess a property interest protected by the Fourteenth Amendment.

In *Weathers* we held that even should the fact of nonrenewal and the reasons therefor be communicated, thus making the teacher "less attractive" to future employers, that this simply does not establish a liberty interest. We quoted with approval this lan-

guage from *Gray v. Union County Intermediate Education District,* 520 F.2d 803 (9th Cir. 1975):

> Nearly any reason assigned for dismissal is likely to be to some extent a negative reflection on an individual's ability, temperament, or character (citation omitted). But not every dismissal assumes a constitutional magnitude. The concern is only with the type of stigma that seriously damages an individual's ability to take advantage of other employment opportunities (citations omitted).
>
> 520 F.2d at 806.

In *Weathers* we also quoted with favor this language employed by then Judge Stevens, now Mr. Justice Stevens, in *Jeffries v. Turkey Run Consolidated School District,* 492 F.2d 1 (7th Cir. 1974):

> In our opinion, the questions whether a nontenured teacher, whose contract is not renewed, has any right to a statement of reasons or to judicial review of the adequacy or accuracy of such a statement are matters of state law, not federal constitutional law. There are sound policy reasons to support either a statutory requirement, or an administrative practice, that a complete and accurate written statement of the reasons for such an important decision be promptly delivered to the teacher. But since, by hypothesis, no constitutionally protected property or liberty interest of the teacher is impaired by the Board's action, she has no federally protected right to a fair hearing or to a fair statement of reasons. The fact that a state, or a School Board, may voluntarily communicate more information to her, or receive more information from her, than the Constitution requires, is not in itself sufficient to create a federal right that does not otherwise exist.
>
> 492 F.2d at 3.

■ Our *Weathers* opinion expressed agreement with Judge Stevens by adopting the rule that, absent a liberty or property employment interest, a nontenured teacher has no greater right to substantive due process than he or she does to procedural due process.

■ Accordingly, we hold that the nonrenewal of Powers' employment contract was not violative of the due process clause of the Fourteenth Amendment.

*Powers' First Amendment Contention*

Powers contends that the nonrenewal of his contract constituted a violation of his academic freedom under the First Amendment to the Constitution. His amended complaint alleged that his termination was in retaliation for his criticisms of the Board, his activities as president of the teachers' association, and the presentation to his classes of "works of art", specifically a lesson concerning the rock opera, "Jesus Christ Superstar".

■ The Trial Court found that Powers' First Amendment rights were not infringed and that his exercise of such rights was not shown to have played any part in the Board's decision not to renew his contract. Further, the Court found substantial evidence that the Board determined not to renew Powers' contract because of certain "deficiencies" which were not limitations upon Powers' exercise of his First Amendment rights. We hold that the Trial Court did not err in these findings. On the same premise, notwithstanding Powers' complaint that the admission of his Exhibit "L" was "limited", we hold that the Trial Court did not err in light of its finding that the Board's decision was not made in retaliation for Powers' exercise of his First Amendment rights.

■ School board members and school administrators—just as other like public officials charged with the duty of exercising discretionary judgment in the tender areas of hiring and terminating personnel under statutes such as those which control in this case—do apply both objective and subjective rationale. While correct objective rationale is more credible in that it exists independent of personal "reflections" or "feelings" (involving such matters as a teacher's academic accomplishments measured by grades achieved, degree or degrees earned, attendance at classes, prior employ-

ment records, and teaching status), it would be unrealistic to deny to Board members the right to employ subjective rationale in the decisional processes. Subjective considerations are, of course, those personal to the individual Board members. They involve, *inter alia,* personal impressions or judgments of the teacher in terms of characteristics as vague and indefinable as "feelings", relating to matters such as personal grooming habits, manner of speech, wearing apparel habits, friendliness, kindness, consideration of others, qualities of cooperation, sense of humor, general demeanor and attitude. It is, of course, impossible to prove the subjective by any "right" or a "wrong" measurement standard. Nevertheless, subjective rationale factors bear significant import in the area of employment concern. We suggest that it is both impossible and inadvisable to eliminate subjective rationale from the decisional process. Judge Doyle, speaking for this Court in a Title VII Civil Rights Action said:

> The fact that all white male supervisors make the evaluations and establish the ratings does not constitute discrimination; that subjective evaluation of black employees by white supervisors is not per se discriminatory.

*Rich v. Martin Marietta Corporation,* 522 F.2d 333, pp. 338–339 (10th Cir. 1975). In any event, courts are ill-equipped to exercise processes superior to those persons empowered by statutes to operate, control, and manage the public schools.

■ Just as most legislation is a compromise between opposing views of public policy, the courts must be ever alert not to sit as a superlegislature (or school board) in weighing the wisdom of legislation or in striking down state laws, regulations or customs because they may be out of harmony, unwise or improvident with a particular philosophy or school of thought. *North Dakota Pharmacy Bd. v. Snyder's Stores,* 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973); *Ferguson v. Skrupa,* 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963). We believe that this blends with a rule deeply imbedded in our legal system, supportive of

a school board's exercise of subjective rationale: A jury—or the court if the cause is tried without a jury—has the exclusive function of observing witnesses while testifying, appraising their credibility, determining the weight to be given their testimony, drawing inferences from the facts established, and resolving conflicts in the evidence in reaching the ultimate conclusions and decision.

Just as we treasure trial by jury, notwithstanding the possibilities of misjudgment resulting in miscarriage of justice, so, too, we recognize that a school board decision in the area of teacher employment may work an injustice. Our system is not perfect. Not all criminals go to jail, and not all trials serve the ends of justice.

The remedy, we suggest, to those such as Powers, is that reserved to the electorate of the school districts. Those aggrieved by school board decisions may seek recourse by the power of the ballot in efforts to effect removal of those board members who do not share their philosophy. While not a perfect solution, certainly the right to vote has proven responsive to the will of the greater number of our citizens who exercise the voting franchise, with its attendant First Amendment rights.

We hold that there is substantial evidence to support the Trial Court's findings that Powers failed to meet his burden of proof. We are not left with a definite and firm conviction that a mistake has been committed. The findings, conclusions and rulings of the Trial Court are not clearly erroneous. *Adams v. Campbell County School District, Campbell County, Wyoming,* 511 F.2d 1242 (10th Cir. 1975); *Garcia v. Gray,* 507 F.2d 539 (10th Cir. 1974), cert. denied, 421 U.S. 971, 95 S.Ct. 1967, 44 L.Ed.2d 462 (1975); *Arnold v. United States,* 432 F.2d 871 (10th Cir. 1970); Fed.R.Civ.Proc., rules 52(a) and 61; 28 U.S.C.A. § 2111.

WE AFFIRM.

LEWIS, Chief Judge (concurring in the result).

This case presents no new nor novel question of law and is essentially a fact case.

Having determined from the record that the findings and conclusions of the trial court are supported, I see neither the need nor the desirability of further dissertations in the opinion.

SETH, Circuit Judge (concurring specially):

I agree to the affirmance of the district court, but instead, and only for the reason that the trial court found the nonrenewal of appellant's contract did not violate his constitutional rights; because there was no expectation of continued employment; there was no property interest; there was no liberty interest involved; and thus the case was decided well within *Roth* and *Sindermann.*

Also I agree that the trial court was correct in its conclusion that no First Amendment rights of appellant were violated. The court found that the decision of the school board was not made in response to appellant's exercise of his First Amendment rights, also that the exercise of such rights by appellant did not play a part in the decision of the board not to renew. These are again supported by the record.

These two points are the basic and only elements in the case, and they were correctly decided by the trial court. This concurrence thus expresses agreement with the ultimate disposition of the appeal as made by Judge Barrett, but I am unable to otherwise agree with his opinion as it treats this case or as it comments on prior opinions of this court.