Emogene H. COOKSON, Plaintiff,

v.

**LEWISTOWN SCHOOL DISTRICT #1 et al., Defendants.**

Civ. No. 3062.

United States District Court,
D. Montana,
Great Falls Division.

July 20, 1972.

Supplemental Opinion Dec. 22, 1972.

984

a teacher holding a valid Montana teaching certificate, was employed by Lewistown School District No. 1 under separate contracts for three consecutive years. She performed satisfactorily and no cause existed for the refusal of the board to employ her for the fourth year. She had been advised that her principal had recommended to the superintendent and the superintendent to the board of trustees that she be employed for the fourth year. After she had been advised that she would not be employed for the fourth year she requested an interview with the superintendent which was granted. Following that she requested a hearing before the board which was denied. She now asserts that she had an expectancy of continued employment and that the termination of the expectancy without a hearing constituted a denial of due process.

■ In Montana the board of trustees of a school district is empowered to employ teachers by contract.[1] When there has been an offer and an acceptance resulting in contracts in four consecutive years [2] then a teacher has a right prior to termination of employment to notice specifying the reasons for termination and a hearing. Rulings adverse to the teacher may be appealed to the county superintendent of schools and the state superintendent of public instruction.[3] No other tenure rights are provided by laws specifically relating to teachers, and in Montana public employees in general have no statutory job security.[4] It is not suggested that there are any administrative rules which would supplement the statutes in this area. It is quite clear that Montana has adopted an employment policy with respect to teachers which frees a school board from any tenure problems during the first three years of a teacher's employment. These three years are the testing years during which not only may

Swanberg, Koby & Swanberg, Great Falls, Mont., for plaintiff.

William A. Spoja, Jr., County Atty., Lewistown, Mont., Chadwick H. Smith, Helena, Mont., for defendants.

## OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

Plaintiff asserts the jurisdiction of the court under 28 U.S.C. § 1343(3) and claims that her civil rights were violated under 42 U.S.C. § 1983. Defendants have filed a motion to dismiss.

Treating the facts alleged in the complaint as true, it appears that plaintiff,

1. R.C.M.1947 § 75–6102.
2. R.C.M.1947 § 75–6103.
3. R.C.M.1947 § 75–6104.
4. Weber v. Highway Comm'n, 333 F.Supp. 561 (D.Mont.1971).

the teacher's merits be weighed but the school's needs for a particular teacher assessed. It may be, and perhaps this reasoning underlies the Montana policy, that in the interests of creating a superior teaching staff a school board should be free during a testing period to let a teacher's contract expire without a hearing, without any cause personal to the teacher, and for no reason other than that the board rightly or wrongly believes that ultimately it may be able to hire a better teacher. Whatever the reason behind the Montana policy the 14th amendment does not yet deny Montana the right to exercise it.[5]

██ Plaintiff's claim that the recommendation of the principal to the superintendent and the superintendent to the school board gave her a job entitlement is not tenable in view of the fact that the power to make teaching contracts is vested solely in the school board. These recommendations may have created in plaintiff's mind an expectation that she would be reemployed but a unilateral expectation of employment is not sufficient to constitute the kind of an entitlement which enjoys 14th amendment protection.[6]

The motion to dismiss is granted. Plaintiff has 20 days within which to file an amended complaint if so advised.

## SUPPLEMENTAL OPINION

The essential facts in this case appear in the court's opinion dismissing the original complaint. Pursuant to leave granted, an amended complaint has now been filed. It is essentially similar to the original complaint except that it contains additional allegations to the effect that:

1. The board charged plaintiff with incompetency and thereby without a hearing imposed a stigma on her.

2. The refusal to reemploy was because of plaintiff's age and plaintiff was deprived of equal protection.

3. The refusal to reemploy was contrary to the provision of House Joint Resolution No. 12 of the 37th Montana Legislative Assembly.[1]

Plaintiff in support of her first contention urges that even if the board could lawfully permit her employment to expire without a hearing it could not in so doing charge her with incompetency. Plaintiff relies upon Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), wherein the Court said at p. 573, 92 S. Ct. at p. 2707:

The State, in declining to rehire the respondent, did not make any charge

---

5. Bd. of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (U.S. 1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (U.S. 1972). The instant case is not complicated by first amendment problems.

6. Bd. of Regents v. Roth, supra.

1. "Whereas, the legislature of the State of Montana finds that the practice of discriminating in employment against properly qualified persons because of their age is contrary to American principles of liberty and equality of opportunity is incompatible with the constitution, deprives the State of Montana of the fullest utilization of its capacities for production, and endangers the general welfare; . . .

"Now, therefore, be it resolved, that the thirty-seventh legislative assembly of the State of Montana hereby declares it to be against the public policy of the State of Montana, and an unfair employment practice, for an employer, by himself or his agent, except in the case of a bona fide occupational qualification or need, because an individual is between the ages of forty (40) and sixty-five (65) years, to arbitrarily refuse to hire or employ, or to bar or to discharge from employment such individual or to discriminate against him in compensation or in terms, conditions or privileges of employment, or to fail or refuse to classify him properly or to refer him for employment, or to advertise employment opportunities in such a manner as to restrict such employment so as to discriminate against such individual; . . ." 1961 Session Laws of the State of Montana, p. 840.

against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For "(w)here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."

Plaintiff received from the board a letter advising her that her services would not be required. No charges were made and no reasons given. She met with the superintendent of schools who advised that the reasons for the board's action were plaintiff's prior illness during the school year, that she was 56 years old and only average teaching could be expected from her, and that during her three years of teaching at Fergus County High School she had had an unsuccessful year of teaching English. It is not shown that these reasons were ever put on record or that any publicity was given to them. In a later letter to plaintiff she was advised that the board's refusal to reemploy was "based on its sound discretion and upon the laws of the State of Montana in light of the board's views of the needs of the School District."

■ Under these circumstances I do not believe that what the school board did would so seriously damage plaintiff's standing and associations in her community as to bring her within the rule announced in *Roth*.

As to the equal protection contention, the unconstitutional discrimination, if any, did not arise from the application of any rule of law, regulation of the board, or established policy of the board. The decision of the board not to renew plaintiff's contract was the product of the board's assessment of the plaintiff and of the needs of the school district. I note that the renewal of plaintiff's contract for an additional year would have given her tenure, and I assume for the purposes of this opinion that the plaintiff upon a trial could prove that the plaintiff's age was a controlling consideration in the decision not to reemploy her.

■ I think that the law has not yet made all people equal, though it may in some halcyon day do so, but even on that day it will not have eliminated the differences between them. They will still differ as they do now in age, size, sex, color, personality, strength, beauty, intelligence, and a myriad of other things. Any selection of an individual for any job, assuming multiple applicants, involves an appraisal of the individual differences and a discrimination against or in favor of some of those differences. I am quite sure that a high school may, in so far as the Constitution is concerned,[2] favor a healthy male over a sickly male or a female for football coach, a healthy female over a healthy male for a women's athletic director or dean of women, a person with an A average in literature over one with a C average for an English teacher, a well-groomed young woman over one with a dirty neck, dirty nails, and sloppy stockings for a home economics teacher. Except in very special cases there can be no unconstitutional discrimination where by the operation of a rule or the exercise of independent executive judgment the factors influencing the choice are rationally related to the needs of the school.

■ The equal protection clause does forbid the consideration of some differ-

2. The problem where sex is involved is, as is not unusual, somewhat more complicated. It is the only difference not given constitutional protection which is protected by 42 U.S.C. § 2000e—2(a). Nothing said here is intended to be a comment on the breadth of that statute.

ences such as color[3] or religious belief or political opinion,[4] but it has not yet been held by any controlling court that the 14th amendment forbids school boards to consider age as an employment factor, and I would not break trail in that direction. It may be that a school faculty should be composed of young people all recently educated, filled with enthusiasm, and relatively close in age to their pupils. It may be that a faculty should be balanced—that the enthusiasm of the young teachers should be tempered by the experience and maturity of the older ones. It may be that a faculty should be composed of old or middle-aged people, though I doubt it. I have no capacity to determine even in the abstract what the ideal faculty should be in terms of the age of its members, and certainly I have no capacity to determine the ages of the teachers that should be hired for a particular faculty at a particular time. I am sure, however, that age is a factor that ought to be considered by those close to the problem in the employment of teachers and that in the interests of education it ill behooves a federal district judge using the Constitution as his excuse to force school boards to ignore what may be a very important factor in the selection of a staff. It is my opinion that plaintiff has no 14th amendment rights based upon the school board's consideration of her age.

Plaintiff's third contention does not pose a federal problem. If the joint resolution concepts which the Montana legislature was willing to resolve but not then or later to enact into law, control public employment in Montana it is for the Montana courts to so say.

It is ordered that the action be dismissed and plaintiff be denied all relief.

3. Wall v. Stanly County Board of Education, 378 F.2d 275 (4th Cir. 1967); Rolfe v. County Board of Education, 391 F.2d 77 (6th Cir. 1968).

4. Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).