Adele C. BRANCH, Plaintiff,

v.

SCHOOL DISTRICT NO. 7 OF RAVALLI COUNTY, the Board of Trustees of School District No. 7, in their Official Capacity and as Individuals, and Duane W. Reagan as Superintendent of School District No. 7 and as an Individual, Defendants.

No. CV–76–54–M.

United States District Court,
D. Montana,
Missoula Division.

May 31, 1977.

William George Harris, Missoula, Mont., for plaintiff.

P. Keith Keller, Helena, Mont., for defendants.

## OPINION AND ORDER

RUSSELL E. SMITH, Chief Judge.

The plaintiff, Adele Branch, was employed by the defendant school district as an elementary teacher for the school years 1974–75 and 1975–76. In March 1976 the school board voted not to employ her for the following year. In response to her request under R.C.M.1947 § 75–6105.1 for the reasons for the Board's refusal to grant her another contract, the Board in writing stated that it thought it could hire a better teacher to complement the system. Plaintiff then requested a hearing before the Board, and a Board meeting was held on April 20, 1976, at which the Board heard plaintiff and some of her supporters. A motion to rehire plaintiff resulted in a 2 to 2 tie, with the Board chairman abstaining. At a meeting on May 4, 1976, a motion to rehire was defeated 3 to 2. In this action, brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3), plaintiff seeks damages, actual and punitive, and reinstatement.

In *Cookson v. Lewistown School District,* 351 F.Supp. 983 (D.Mont.1972), this court determined that the then law of Montana permitted a school district to terminate the services of a nontenured teacher without cause. By 1975 Mont. Laws ch. 142[1] the legislature amended R.C.M.1947 § 75–6105.-1, and it is now required that the school district, if requested to do so, give the reasons for a failure to renew. However, there is no indication that the policy of permitting a school board to terminate a nontenured teacher without cause has changed.

[1] " * * * (2) When the trustees notify a nontenure teacher of termination, the teacher may within ten (10) days after receipt of such notice make written request of the trustees for a statement in writing of the reasons for termination of employment. Within ten (10) days after receipt of the request the trustees shall furnish such statement to the teacher."

■ The problem posed here is not whether there was good cause for not renewing the plaintiff's contract but whether it was not renewed for some impermissible cause. Plaintiff contends that she had exercised her first amendment rights in criticizing a former superintendent of the school district, in writing letters to the newspaper, in being active in teacher union matters, in attending and speaking at school board meetings, and in being critical of the administration, and that the school board retaliated by not hiring her for a third year.

I find from all of the evidence that plaintiff was a perfectionist, insistent on her rightness, and that she was vocal about it. She brought before the Board, at school board meetings, what she considered to be errors on the part of the superintendent and principal without making any effort to correct them at an administrative level. Indicative of plaintiff's attitude is Ex. 9, a summary of an evaluation of her made by Principal Hoffman. The report rated her at the highest levels in all cases and recommended reemployment and a raise. Hoffman added these comments: "Very professional teacher. Sympathetic of students problems. Could be more direct when dealing with other teachers and supervisors." When plaintiff receipted the summary, she added: "My signature shows that I have seen this form. However, observation procedures under the master contract have not been followed. It seems we must either follow the contract or declare it invalid. I have *not* been observed."

It fairly appears from plaintiff's writings that she had a low opinion of the school and its administration, including the school board. This is confirmed by the fact that plaintiff sent two daughters, who could have attended the Victor school, to another school some ten miles removed from her home in Victor. Plaintiff looked for opportunities to fault the administrators and inevitably alienated them. A portion of the irritation was generated by speech which had first amendment protection. The question then is: Would the Board have reached the same decision as to plaintiff's reemployment, even in the absence of the protected conduct? *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

Three members of the school board voted against the motion to rehire. Each of the three trustees gave his reasons for his vote, and the question is whether the inferences to be drawn from all of the evidence are such that the court should find that the reasons asserted by the Board members were not credible.

■ Board member White is a university professor with a doctorate in education. It is apparent that White's teaching philosophy is different from that of the plaintiff. White felt that plaintiff was not humanistic, that the children in her room were not smilingly enthusiastic, that she did not interact with people. If this case depended upon an evaluation of plaintiff as a teacher, I would find from a preponderance of the evidence that she was a disciplinarian, set high performance standards, and was an able and effective teacher. But the problem is not how I judge her nor whether White was right or wrong in his judgment. If, judged by White's philosophy, plaintiff was not a good teacher, that is a sufficient reason for his vote not to rehire. On the whole record I think White's testimony is credible.

Board member Buelke has a daughter who was a pupil in plaintiff's class. She reported to him that she had heard plaintiff use profanity in speaking of the school principal. Buelke was irritated because plaintiff had caused to be published a letter to the editor written by his daughter criticizing adults for improper flag etiquette at a Memorial Day parade when, in fact, the daughter did not attend the parade.[2] Buelke was motivated in some measure by the fact that plaintiff sent her daughters to another school and was herself not happy in the Victor school. He thought that, in her appearances at the Board meetings, she was

---

2. I think there was nothing improper in plaintiff's action and that Buelke was extraordinarily sensitive about it, but the event did influence him.

trying to circumvent the school administration. I find from all of the evidence that, when Buelke said he thought they could get a better all-around teacher, he was telling the truth as he saw it.

Clark, the chairman of the Board, first voted not to renew plaintiff's contract. At the first meeting at which reconsideration was proposed, he did not vote. Clark denied that his vote was based on plaintiff's exercise of her first amendment rights. Clark based his vote, in part at least, on the fact that plaintiff was not cooperative with the administration. Clark asked plaintiff several questions at the May 4th meeting. Her answers were evasive and contained a note of contempt. They were sufficient to confirm in Clark's mind the belief that plaintiff had a low opinion of the Victor school system and was not a cooperative teacher. I find that he was telling the truth as he saw it.

From all of the evidence, I find that the Board would have acted as it did in the absence of the protected conduct.

■ Plaintiff claims that the notice given to her under R.C.M.1947 § 75–6105.1 was constitutionally insufficient and cites *Drown v. Portsmouth School District*, 435 F.2d 1182 (1st Cir. 1970). That case does hold that a nontenured teacher is constitutionally entitled to a written explanation in some detail as to the reasons for nonretention. I disagree.[3] I believe that, when a school district enters into an employment contract with a teacher, that teacher's entitlement is found within the contract of employment and the law, as revealed by pertinent statutes and regulations. *See Weber v. Highway Commission*, 333 F.Supp. 561 (D.Mont.1971). I believe the state should be free to develop its own policies in hiring and firing of employees and that, in the absence of impermissible discrimination,

or the denial of specifically expressed constitutional rights, federal courts should not, by carefully weighing what they consider to be the policy pros and cons, substitute their judgment for that of the governing bodies of the state.[4] The decision in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), does not in my opinion justify the result reached by the First Circuit in *Drown v. Portsmouth School District*, 451 F.2d 1106 (1st Cir. 1971). The *Goldberg* case involved a change of status without prechange hearing. The "overpowering fact" which controlled in *Goldberg v. Kelly, supra,* 397 U.S. at 261, 90 S.Ct. at 1017, was:

> ". . . a welfare recipient is destitute, without funds or assets. . . . Suffice it to say that to cut off a welfare recipient in the face of . . . 'brutal need' without prior hearing of some sort is unconscionable . . . ."

In *Drown* the court did not alter the change of status and refused to impose the due process requirement of *Goldberg* to the change of status which had been accomplished. A teacher may have a substantial interest in a notice of reasons for nonretention, but that interest is not the "overpowering fact" described in *Goldberg*. I conclude that the sufficiency of the notice is not a matter of federal constitutional dimension. I do not judge the sufficiency of the notice under the statute.[5] If the notice was insufficient as a matter of state law, that is a state question which should be settled in the state courts.

■ It is claimed that the decision to terminate was made in violation of R.C.M. 1947 § 82–3402 and Mont. Const. art. II, § 9. If so, the questions do not involve rights guaranteed by federal law or the Constitution of the United States, and the remedy is to be found in the state courts.

---

3. Cf. *Weathers v. West Yuma County School District*, 530 F.2d 1335 (10th Cir. 1976).

4. *Weathers v. West Yuma County School District, supra* n. 3, at 1340.

5. Without drawing any conclusions, I note that the language of R.C.M.1947, § 75–6104, relating

to tenured teachers, requires "a written statement declaring clearly and explicitly the specific reason or reasons for the termination," while R.C.M.1947 § 75–6105.1, relating to nontenured teachers, requires "a statement in writing of the reasons for termination."

This opinion constitutes the findings of fact and conclusions of law of the court.

IT IS ORDERED that plaintiff take nothing by her complaint. Let judgment be entered accordingly.