**Elizabeth FUJIWARA,**
**Plaintiff-Appellant,**

**v.**

**Charles G. CLARK, etc., et al,**
**Defendants-Appellees.**

**No. 82–4095.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 10, 1982.

Decided Feb. 2, 1983.

Rehearing and Rehearing En Banc
Denied April 1, 1983.

Paul Alston, Paul, Johnson & Alston, Honolulu, Hawaii, for plaintiff-appellant.

Christobel K. Kealoha, Lawrence Kumabe, Honolulu, Hawaii, for defendants-appellees.

Before MERRILL, WRIGHT and TRASK, Circuit Judges.

MERRILL, Circuit Judge:

Plaintiff-Appellant Elizabeth Fujiwara was discharged from a position she held with the Department of Education of the State of Hawaii ("DOE"). She contends that she was discharged for exercising rights of free speech guaranteed by the First and Fourteenth Amendments of the Constitution of the United States. She has brought this action for injunctive relief under 42 U.S.C. § 1983 against two officers of the DOE and the members of the Board of Education. She also sought damages from the two DOE officers, Appellees Yamashita and Clark.

The District Court granted Appellant's request for an injunction, and Appellant has been restored to her former position. 477 F.Supp. 794 (D.Hawaii 1978). In granting this relief, the District Court reserved the question of Appellant's right to recover damages against the two officers of the DOE. Later, on motion brought by the officers, the District Court granted them summary judgment against Appellant, holding that as matter of law the doctrine of qualified immunity protected them from personal liability for damages. 477 F.Supp. 822 (D.Hawaii 1979). This appeal is taken from that judgment and presents the question whether, under the facts of this case, the doctrine of qualified immunity applies as matter of law.[1]

I

Appellant was hired in 1977 by the DOE for its Management, Audit and Civil Rights Branch, where she was to monitor the DOE compliance with federal civil rights statutes and regulations. In December 1977, Appellant and a co-worker, on several occasions, gave statements to the Honolulu press expressing the view that the DOE was not complying with the federal regulations respecting civil rights of faculty members and students. On January 30, 1978, Appellee Yamashita, as Director of the branch of the DOE that employed Appellant, issued to Appellee Clark as Superintendent of Education a recommendation that Appellant be dismissed. Yamashita gave eight reasons for termination, each dealing with specific acts or omissions on Appellant's part. Six of the eight reasons related to statements that Appellant had made to the press or to the scheduling of news conferences. Two of the reasons were unrelated to the right of free speech. Appellant was formally discharged by Appellee Clark on February 7, 1978.

Appellant then brought this action. Appellant sought a temporary injunction, which evolved into a motion for a permanent injunction. After taking testimony, receiving depositions and hearing extensive oral argument, the District Court granted a permanent injunction restoring Appellant to her former position with all accrued employee benefits and enjoining Appellees from disciplining, demoting or dismissing Appellant by reason of or arising out of any of the statements attributed to her in the letters recommending discharge. 477 F.Supp. 794.

Yamashita, Clark and others appealed the grant of injunction, but, by order of this Court, that appeal was dismissed for want of prosecution. As the District Court noted in its later Order Granting Defendants Partial Summary Judgment, its decision on the injunctive claim finally determined all issues common to it and the claim for dam-

---

1. The District Court's grant of partial summary judgment for Appellees on the basis of their "objective" good faith is published at 477 F.Supp. 822, and the Court's order regarding Appellees "subjective" good faith, and its judgment for Appellees, are unpublished. Appellant's co-worker who sued with her in the District Court has not appealed.

ages. 477 F.Supp. at 829 & n. 16. *See Perryton Wholesale, Inc. v. Pioneer Distributing Company of Kansas, Inc.,* 353 F.2d 618, 623 (10th Cir.1965), *cert. denied,* 383 U.S. 945, 86 S.Ct. 1202, 16 L.Ed.2d 208 (1966).[2]

## II

Following the grant of permanent injunction, Appellees moved the District Court for a summary judgment on the issue of damages, contending that they were entitled to qualified or good-faith immunity from personal liability for damages. The District Court granted summary judgment, and this appeal followed. The question presented is whether the District Court erred in holding as matter of law that qualified or good-faith immunity protected Appellees from personal liability for damages resulting from their firing of Appellant in violation of her constitutional rights.

In *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the Supreme Court determined that school officials are entitled to qualified immunity from damage awards under § 1983 for violation of the constitutional rights of students. It stated:

A compensatory award will be appropriate only if the school board member has acted * * * with such disregard of the student's clearly established constitutional rights that his action cannot rea-

sonably be characterized as being in good faith.

420 U.S. at 322, 95 S.Ct. at 1001.

The Court made it clear, however, that a school official "must be held to a standard of conduct based * * * on knowledge of the basic, unquestioned constitutional rights of his charges". *Id.* The Court held:

Therefore, in the specific context of school discipline, we hold that a school board member is not immune from liability for damages under § 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected * * *.

*Id.*[3]

In *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), the Court restated the *Wood v. Strickland* rule, breaking it into three parts:

Under the * * * *Wood v. Strickland* rule, the immunity defense would be unavailing to petitioners if the constitutional right allegedly infringed by them was clearly established at the time of their challenged conduct, if they knew or should have known of that right, and if they knew or should have known that their conduct violated the constitutional norm.

*Id.* at 562, 98 S.Ct. at 860.

In our case, the District Court, in granting the permanent injunction, held that Appellant's constitutional rights had been vio-

---

**2.** This is not an abrogation of either of the parties' right to a jury trial because both Appellants and Appellees waived their right to a jury trial on the litigated issues. 477 F.Supp. at 831.

**3.** The *Wood v. Strickland* Court also required of a school official that his action in violation of constitutional rights be taken with "permissible intentions" and motivation and that immunity would not apply "if he took action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student". 420 U.S. at 322, 95 S.Ct. at 1001. This has given rise to discussion in cases dealing with qualified immunity of an "objective" and "subjective" bad-faith dichotomy and holdings to the effect that qualified immunity is lost if either class of bad faith exists. In *Harlow v.*

*Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Court effectively eliminated the "subjective" class of bad faith, based upon malice or bad motive. What is left, however, has elements of subjectivity. To claim immunity, the defendant must prove that "he neither knew nor should have known of the relevant legal standard." *Id.,* 102 S.Ct. at 2739; *see id.* 102 S.Ct. at 2740 (Brennan, J., concurring).

In the present case the District Court determined on motions for summary judgment that Appellees had acted both in "subjective" and "objective" good faith. In light of *Harlow v. Fitzgerald,* however, we need consider only the "objective" good faith determination on this appeal.

lated by Appellees when she was fired. 477 F.Supp. at 802. And when discussing qualified immunity, it dealt explicitly with the first two prongs of the *Procunier* test. It stated that the case of *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968),

> [c]learly established that [plaintiffs] * * * had a protected constitutional right under the First Amendment to address the public concerning the DOE's failure to comply with the Civil Rights laws[,]

and that

> defendants should have known of this right because it was an established legal principle.

477 F.Supp. at 834.

In holding that these rights were violated, the District Court followed the holding of *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), as to the standard to be applied where the firing of a teacher is for multiple grounds, some of which are protected by the Constitution and some are not. There the Supreme Court stated:

> Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor"—or, to put it in other words, that it was a "motivating factor" in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct.

429 U.S. at 287, 97 S.Ct. at 576 (footnote omitted). *See Peacock v. Duval,* 694 F.2d 644, 645 (9th Cir.1982); *Nicholson v. Board of Education,* 682 F.2d 858, 862 (9th Cir. 1982).

In our case, the District Court, in granting the permanent injunction, resolved both of these factors in favor of Appellant. It stated:

> Plaintiff Fujiwara was discharged from public employment in substantial part because of her exercise of her right to speak on issues of public importance in violation of the protection accorded her by the First Amendment. Defendants have failed to show by a preponderance of the evidence that the same decision would have been reached as to her discharge in the absence of the protected conduct.

477 F.Supp. at 802.

### III

The question remains whether—under the third *Procunier* prong—Appellees should have known that their conduct would violate Appellant's constitutional rights; that is, whether the *Mt. Healthy* standard was clearly established. Since the decision of the District Court, the Supreme Court has dealt with this question in *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). There the Court stated:

> On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that *he neither knew nor should have known* of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.

By defining the limits of qualified immunity essentially in objective terms, we provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences." *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967).

102 S.Ct. at 2739 (footnotes omitted) (emphasis supplied).

The District Court, in holding that qualified immunity existed, did not disturb its earlier holdings in granting the injunction to the effect that under *Mt. Healthy* Appellant's constitutional rights had been violated and that she was entitled to reinstatement. It concluded, however, that judicial decisions handed down by lower courts after *Mt. Healthy,* purporting to apply the *Mt. Healthy* standard, operated to render that ruling ambiguous to a layman and that the Appellees might well have believed that notwithstanding the fact that Appellant, to their knowledge, had a constitutional right to speak out as she did, they could properly fire her because there were other, non-speech-related grounds for dissatisfaction with her services. 477 F.Supp. at 837.

■ We cannot agree that the *Mt. Healthy* rule was rendered ambiguous by later lower court applications. *Mt. Healthy* clearly established the rule as applied by the District Court in granting injunction: if Appellant was discharged in substantial part because of her exercise of her right to speak out on issues of public importance, that discharge violated her First Amendment rights unless the employer would have reached the same decision in the absence of the protected conduct. The mere existence of other grounds for firing does not suffice. What is necessary is that the school officials show that those grounds would have caused them to take the same action in the absence of the protected conduct.

The District Court referred to three cases that it felt rendered the *Mt. Healthy* holding unclear. 477 F.Supp. at 835–37. As we read them, they do not in any respect suggest a departure from the rule. They are completely consistent with it. In two of them, courts determined that the challenged action *would* have been taken in absence of the protected conduct. *Branch v. School District No. 7,* 432 F.Supp. 608, 611 (D.Mont.1977); *Williams v. Day,* 412 F.Supp. 336 (E.D.Ark.1976), *aff'd,* 553 F.2d 1160 (8th Cir.1977). In *Williams,* the district court's opinion predated *Mt. Healthy,* but the court concluded that the termination decision was not based on the teacher's exercise of protected conduct. 412 F.Supp. at 340. The Eighth Circuit specifically cited the then-new *Mt. Healthy* standard in affirming the district court. 553 F.2d at 1162. In the third case, *Wagle v. Murray,* 560 F.2d 401 (9th Cir.1977), *cert. denied,* 434 U.S. 1014, 98 S.Ct. 729, 54 L.Ed.2d 758 (1978), a jury had decided in favor of reinstatement and the trial judge had vacated the verdict and granted judgment notwithstanding the verdict. Following a Supreme Court remand for consideration in light of *Mt. Healthy,* 431 U.S. 935, 97 S.Ct. 2645, 53 L.Ed.2d 252 (1977), this Court had reinstated the jury's verdict, holding that under *Mt. Healthy* the jury must decide if the plaintiff would have been fired in any event, and that there was evidence to support the jury.

■ The law governing the conduct of Appellees was then clearly established by *Mt. Healthy,* and Appellees could have been expected to be familiar with it. Under the standards laid down in *Harlow v. Fitzgerald,* 102 S.Ct. at 2739, knowledge of the law is attributable to Appellees, and qualified immunity as matter of law does not exist under the facts of this case.

As there is no question as to the outcome of the case, the judgment of the District Court is summarily reversed. We remand for a determination of damages.

ORDER DENYING REHEARING

Before MERRILL, WRIGHT and TRASK, Circuit Judges.

█ In their Petition for Rehearing Defendants-Appellees argue that the proper question under the third prong of *Procunier* is whether at the time of the termination decision they knew or should have known that they could not prevail in their contention that Appellant's employment was properly terminated. They assert that a finding against one party does not per se eliminate the possibility that his contention to the contrary was in good faith.

There may be cases where this contention would have merit—cases where critical factual issues were disputed in good faith. This is not such a case. Here there simply was no dispute upon the critical *Mt. Healthy* issues at the time the injunction was granted.

It could hardly be denied that the protected conduct figured substantially in the discharge. Of the eight grounds upon which Appellees based the discharge in their notice to Appellant, six were related to the protected conduct. As to whether Appellees would have discharged Appellant absent the protected conduct, apparently they had given no thought to the question and were not aware of its significance. Certainly they made no effort to meet their burden. Appellee Clark testified at the injunction hearing that all of the reasons listed in the discharge notice were important to him in reaching his decision.

The dispute was one of law. Appellants were simply in error in believing that they could lawfully discharge Appellant despite the fact that the discharge was in substantial part because of her protected conduct. Such belief as matter of law cannot be said to have been in good faith. Under *Harlow,*

for reasons of public policy, those holding such positions of responsibility should know the law and are deemed to know it.

The panel as constituted in the above case has voted to deny the petition for rehearing. The full court has been advised of the suggestion for en banc rehearing, and no judge of the court has requested a vote on the suggestion for rehearing en banc. Fed. R.App.P. 35(b).

The petition for rehearing is denied and the suggestion for a rehearing en banc is rejected.